**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**ENNISS FAMILY REALTY I, LLC**                                          **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 3:11cv739-KS-MTP**

**SCHNEIDER NATIONAL CARRIERS, INC.**                              **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendant Schneider National Carrier, Inc.'s ("Schneider") Motion to Strike Expert [37]; Schneider's Motion to Declare Lease Agreement and Amendments Ambiguous, to Declare Enniss's Interpretation as Unreasonable and to Declare Penalties Unenforceable ("Motion to Declare") [38];[1] Plaintiff Enniss Family Realty I, LLC's ("Enniss") *Daubert* Motion to Exclude Expert Opinions of Steven Rogers ("*Daubert* Motion") [42]; Enniss's Motion for Summary Judgment [44]; Enniss's Motion to Strike Steve Parent's October 4, 2012, Affidavit and for Leave to File Surreply ("Motion to Strike") [54]; and Schneider's Motion for Leave to Supplement Motion for Declaratory Relief Outside of Dispositive Motion Deadline and Deadline for Amending Pleadings ("Motion for Leave") [59].[2]  Having considered the submissions of the parties, the record and the applicable law, the Court finds that:

      1)     Enniss's Motion for Summary Judgment [44] should be denied;

      2)     Schneider's Motion to Declare [38] should be granted in part and denied in

---

[1]   This motion was docketed as a "Motion for Partial Summary Judgment".

[2]   This motion was docketed as a "Motion to Amend/Correct".

part;

3)      Schneider's Motion to Strike Expert [37] should be granted in part and denied in part;

4)      Enniss's *Daubert* Motion [42] should be granted in part and denied in part;

5)      Enniss's Motion to Strike [54] should be denied; and

6)      Schneider's Motion for Leave [59] should be granted in part and denied in part.

## BACKGROUND

This dispute centers upon the calculation of rental payments due to Enniss as the landlord under the terms of a commercial lease agreement where Schneider is the tenant.  Enniss principally contends that the clear and unambiguous terms of the lease agreement require Schneider to pay $49,807.82 per month beginning in September of 2009.  Schneider's position is that the rental fee cannot be determined solely by the terms of the parties' agreement and that $41,895.42 is the correct amount pursuant to parol evidence and certain canons of contract construction.  The parties do not dispute that a base monthly rental fee of $38,750.00 is required under the terms of the lease agreement starting in September of 2009.  The rub lies in calculating adjustments to that base fee pursuant to changes in the Consumer Price Index ("CPI").[3]

In 1999, Schneider, as tenant, entered into a Standard Commercial Lease Agreement ("Lease" or "Agreement") [38-1] with Anika & Associates, Inc. ("Anika"), as landlord, for seventeen thousand (17,000) square feet of industrial/warehouse space

---

[3]      The CPI is published by the United States Department of Labor (Bureau of Labor Statistics) and is designed to measure changes over time in prices paid by urban consumers for various goods and services.

2

located at 301 East Metro Parkway, Brandon, Mississippi, 39042 (the "leased premises" or "subject property").  The beginning rent was $11,758.33 for the first sixty (60) months of the Lease.  CPI adjustments are and were to be made on the 61st, 121st and 180th months (2004, 2009, and 2014, respectively) following the commencement of the Lease.  The first CPI adjustment was made in September, 2004 to the beginning rent, and the rent was increased to $13,170.50.  This adjustment occurred without issue.

On or about July 24, 2006, the Lease was amended to account for an expansion of the industrial/warehouse space on the leased premises.  (*See* 1st Amendment to Lease [38-2].)  The definition of the "Premises" in the Lease was expanded to include a "Building" encompassing approximately fifty thousand (50,000) square feet.  Also, the "Base Rent," as originally defined in the Lease exclusive of CPI adjustments, was changed to $38,750.00 per month effective November 1, 2006, or the date Schneider actually obtained possession of the expanded "Premises."  Beginning September 1, 2009, and running until August 31, 2019, the "Base Rent" was to be "$38,750.00 (plus CPI)".  This Amendment also foreclosed Schneider's ability to terminate the Lease prior to January 1, 2011.  Further, Schneider and Anika ratified and adopted all of the remaining terms and conditions of their original Agreement.  On or about October 25, 2006, Schneider and Anika amended the Lease a second time.  (*See* 2nd Amendment to Lease [38-3].)  This Amendment extended the Lease term to March 31, 2027; changed "Base Rent" to $38,750.00 per month effective April 1, 2007; and set "Base Rent" between September 1, 2009 and March 31, 2027, at "$38,750.00 (plus CPI)".

In May of 2007, Enniss purchased the subject property from Anika, and Anika

3

assigned all rights and obligations under the Lease to Enniss.  (*See* Assignment and Assumption of Lease and Rent [38-4].)  Thus, Enniss became Schneider's landlord.

From around May 1, 2007, through August 31, 2009, Enniss billed and Schneider paid monthly rent in the amount of $38,750.00.[4]  A CPI adjustment was scheduled to occur in September, 2009.  This is when the dispute between Enniss and Schneider arose.  Since the dispute turns on calculating a CPI adjustment under the Lease, the Court sets forth below the relevant Lease and Amendment terms:

## Lease [38-1]

### II.  Base Rent

A. Tenant agrees to pay to Landlord base rent for the Premises, in advance, without demand, deduction or set off, for the entire term hereof at the rate of Eleven Thousand Seven Hundred Fifty Eight and 33/100 Dollars ($11,758.33) per month, in advance, except that the rent due for the first month of the term shall be due on the date of execution of this Lease. Thereafter one such monthly installment shall be due and payable without demand on or before the first day of each calendar month succeeding the commencement date during the term hereof, except that the rental payment for any fractional calendar month at the commencement or end of the Lease period shall be prorated.

B. CPI Adjustment. The rent shall be adjusted commencing on the sixty-first month following the Commencement Date, on the One Hundred Twenty First month and on the One Hundred Eightieth month thereafter (the "Adjustment Date") by the percentage increase (if any) in the Consumer Price Index from the Commencement Date to each Adjustment Date, including any extension thereof. The base for computing the adjustment is the Consumer Price Index-All Urban Consumers, All Items ("CPI-U"), for the Southern Urban Area published by the United States Department of Labor, Bureau of Labor Statistic [*sic*], in which 1982-84=100 (the "Index"), which is published for August, 1999 (the "Beginning Index"). If the Index published nearest the Adjustment Date ("Adjustment Index") has

---

[4] This sum and other rental amounts referenced in this opinion exclude certain costs, taxes, and maintenance and insurance expenses paid by Schneider as "Operating Costs."  (*See* Lease [38-1] at ¶ IV.)  Operating Costs are in addition to the "Base Rent" specified in the Lease and are not at issue in this lawsuit.

4

increased over the Beginning Index, the Rent specified in Paragraph II.A. shall be adjusted by subtracting the Beginning Index from the Adjustment Index, then dividing the difference by the Beginning Index, and multiplying the quotient of that calculation by the monthly Rent payable during the first sixty months of the term of the Lease ($11,758.33 per month) (the "Beginning Rent") set forth in Paragraph II.A. The product of that multiplication shall then be added to the Beginning Rent, and the resulting sum shall be the monthly rent for the sixty month period following the applicable Adjustment Date. By way of illustration only, if the August 1999 figure for the Beginning Index is 120 and the August, 2004 figure is 125 (the first Adjustment Index), then the monthly rent for the ensuing sixty months would be increased by 4.17%, to a monthly rental of Twelve Thousand Two Hundred Forty Eight and 65/100 ($12,248.65) until the next adjustment on the One Hundred Twentieth month.

### 2nd Amendment to Lease [38-3]

2. **Base Rent.**  The Base Rent, as originally defined in Paragraph II(A) of the Lease Agreement, shall be adjusted to . . . ($38,750.00) per month.  The effective date of the Base Rent adjustment shall be April 1, 2007, provided that if Landlord can not deliver the possession of the Premises on April 1, 2007, the Base Rent adjustment date shall be the date when Tenant actually obtains the possession of the Premises.

   Therefore, the Base Rent, as defined in Paragraph II(A) of the Lease Agreement, shall be as follows:  [$38,750.00 (plus CPI) for September 1, 2009 — March 31, 2027.]

On September 1, 2009, Enniss began billing $44,413.62 for rent.  (*See* Sept., Oct. 2009 Invoices [38-5].)  Enniss calculated this figure by determining the dollar per square foot rental fee for the original 17,000 square feet Building space, using that fee in the CPI adjustment formula specified under Paragraph II.B. of the Lease, and then multiplying the result of that formula by the 50,000 square feet Building space existing as of April, 2007.  On November 1, 2009, Enniss increased the amount billed to $49,145.22.  (*See* Nov., Dec., Jan. Invoices [38-7].)  This amount was based on Enniss's amended position that the entire 50,000 square feet Building space should be

used in calculating the CPI adjustment.  In accordance with this position, Enniss used the amount of $38,750.00 in the CPI adjustment formula in place of "Beginning Rent." Apparently due to computational or typographical errors in calculating the rental fee of $49,145.22, Enniss increased the amount billed to $49,807.82 in February of 2010. (*See* Feb. Invoice [38-9].)

In November, 2009, Schneider increased its payments from $38,750.00 to $40,688.68.  Schneider's basis for the increase was that the 1999 Building space (17,000 square feet) was subject to a CPI adjustment in 2009 with a beginning CPI of August, 1999, while the 2007 space (33,000 square feet) would not undergo a CPI adjustment until 2012, and then only with a beginning CPI of April, 2007. In or around April, 2010, Schneider increased its payments to $41,895.42.  This amount is based on Schneider's amended position that a CPI adjustment would be made in 2009 for the entire leased premises, with a beginning CPI of August, 1999 for the 1999 Building space and a beginning CPI of April, 2007 for the 2007 Building space.

On November 7, 2011, Enniss filed a Complaint for Declaratory Judgment [1-1] in the Chancery Court of Rankin County, Mississippi, concerning its dispute with Schneider over rental payments.  On December 2, 2011, Schneider removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332.  Enniss is a citizen of California for purposes of diversity jurisdiction because all of its members are residents of that state.[5]  Schneider is a corporate citizen

---

[5]    *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (holding that the citizenship of a limited liability company is determined by the individual citizenship of each of its members).

of Nevada and Wisconsin since it was incorporated in the former and has its principal place of business in the latter.[6]  Neither party contends that the amount in controversy fails to exceed "the sum or value of $75,000, exclusive of interest and costs . . . ."  28 U.S.C. § 1332(a).  The Court is satisfied that federal jurisdiction exists over this cause, and is ready to rule on the parties' motions.

## DISCUSSION

### I.     Enniss's Motion for Summary Judgment [44]

#### A.     Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.

---

[6]    A corporation is a citizen of the state where it has its principal place of business and the state where it was incorporated for diversity of citizenship purposes.  *See* 28 U.S.C. § 1332(c)(1).

7

2010), *cert. denied*, 131 S. Ct. 2972 (2011) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Summary Judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2103 (2012) (quoting *Celotex Corp.*, 477 U.S. at 322).

## B.    Analysis

Enniss asks that the Court find as a matter of law that the Lease requires Schneider to pay $49,807.82 per month effective September 1, 2009; that the Lease requires Schneider to pay a five percent (5%) monthly penalty on all outstanding rental payments; and that the Lease requires Schneider to reimburse Enniss for its attorney's "fees generated in defense of the Lease Agreement." (*See* Schneider's Mem. of Law in Supp. of Mot. for SJ [45] at p. 7.) The Court will address first whether the Lease expressly requires a monthly payment of $49,807.82. If Enniss is not entitled to any amount beyond what Schneider has paid since September 1, Enniss's request for

attorney's fees incurred in defense of the Lease and for interest on past due rental payments will be moot. The Court will apply Mississippi law in ruling on Enniss's motion since jurisdiction is based on diversity of citizenship and both parties rely on Mississippi law in support of their respective positions. *See Exxon Corp. v. Crosby-Miss. Res., Ltd.*, 154 F.3d 202, 205 (5th Cir. 1998) ("Because this suit is founded on diversity jurisdiction, the district court appropriately turned to Mississippi law for the applicable standard of contract interpretation.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

Mississippi courts employ "a three-tiered approach to contract interpretation." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 284 (¶ 13) (Miss. 2005) (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)). "First, the 'four corners' test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Id.* The court should "read the contract as a whole, so as to give effect to all of its clauses." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (¶ 10) (Miss. 2003). "When an instrument's substance is determined to be clear or unambiguous, the parties' intent must be effectuated." *Pursue Energy Corp.*, 558 So. 2d at 352. Second, a court should look to "the discretionary canons of contract construction"[7] if the parties' intent remains unclear or illusive after a reading of the instrument. *Austin v. Carpenter*, 3 So. 3d 147, 150 (¶ 15) (Miss. Ct. App. 2009). Third, "if the contract continues to evade clarity as to

---

[7] Ambiguities are construed against the party that drafted the agreement. *See Pursue Energy Corp.*, 558 So. 2d at 352-53. Written contract provisions prevail over conflicting printed terms. *See id.* at 353. There are other cannons that need not be stated here.

the parties' intent, the court should consider extrinsic or parol evidence." *Royer Homes of Miss., Inc.*, 857 So. 2d at 753 (¶ 11).

The Mississippi Supreme Court does not require strict adherence to this step-by-step approach in all circumstances. *See Pursue Energy Corp.*, 558 So. 2d at 351 n.6 ("Indeed, overlapping of steps is not inconceivable."). Further, a court need not go through the entire three steps in the context of a request for summary judgment. *See Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (¶ 20) (Miss. 2012). "If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate." *Id.*; *see also Bogy v. Ford Motor Co.*, 824 F. Supp. 2d 733, 739 (S.D. Miss. 2011) (finding the interpretation of an ambiguous contract provision to be a jury question).

Enniss posits that the Amendments to the Lease clearly and unambiguously require the amount of $38,750.00 to be substituted for the "Beginning Rent" amount of $11,758.33 in the Lease's CPI adjustment paragraph (¶ II.B.). Enniss thus contends that Schneider is required to pay $49,807.82 in rent pursuant to the following formula:

1.  Adjustment CPI Index (2009) - Beginning CPI Index (1999) = Differential
    209.000 − 162.6 = 46.4

2.  Differential / Beginning CPI Index = Quotient
    46.4 / 162.6 = .285363

3.  Quotient x Beginning Rent = Product
    .285363 x $38,750 = $11,057.82

4.  Product + Beginning Rent = Adjusted Rent

10

$11,057.82 + $38,750 = $49,807.82.

Schneider counters that the Lease and its Amendments are silent and ambiguous as to how to calculate CPI adjustments beginning in September, 2009. Schneider thus requests that the Court utilize parol evidence and employ canons of contract construction in interpreting the Agreement.

A contract should be considered ambiguous if "a careful reading of the instrument reveals it to be less than clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout . . . ." *Barnett v. Getty Oil Co.*, 266 So. 2d 581, 586 (Miss. 1972). Furthermore, "contractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another provision, or where terms are unclear or of doubtful meaning." *Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 143 (N.D. Miss. 1987) (citing *Dennis v. Searle*, 457 So. 2d 941 (Miss. 1984)). Ambiguity may also arise when contract terms are silent as to certain issues arising between contracting parties. *See Arledge v. Gulf Oil Corp.*, 571 F.2d 1388, 1391 (5th Cir. 1978) (citing Mississippi cases for the proposition that the fact-finder may turn to extrinsic evidence to determine the parties' intent "[w]here a written agreement is silent or ambiguous"); *Tubb v. Monroe County Elec. Power Ass'n*, 912 So. 2d 192, 197 (¶ 17) (Miss. Ct. App. 2005) (providing that an ambiguity exists and the intentions of the parties must be determined where the grant of an easement is silent as to its width); *but cf. Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 115 (¶ 19) (Miss. 2005) ("[S]ilence alone does not necessarily create an ambiguity as a matter of law.").

It is clear to the Court that the "four corners" of the parties' Agreement require "$38,750.00 (plus CPI)" in rent starting in September, 2009. It is "less than clear" as to how CPI calculations are to be made starting in September, 2009. *Barnett*, 266 So. 2d at 586. First, substituting the amount of $38,750.00 for the "Beginning Rent" in Paragraph II.B. of the Lease, pursuant to Enniss's interpretation, is not supported by the express wording of the Lease and its Amendments. The 2nd Amendment changed "Base Rent," as originally defined in Paragraph II.A. of the Lease, to $38,750.00 effective April 1, 2007. Although Paragraph II.B. references the rent specified in Paragraph II.A., it does so pursuant to the following language: "the monthly Rent payable during the first sixty months of the term of the Lease ($11,758.33 per month) (the 'Beginning Rent') set forth in Paragraph II.A." The 2nd Amendment did not go back and change the amount of rent that Schneider paid during the "first sixty months" of the Lease, which was executed in 1999. This Amendment changed Base Rent **effective April 1, 2007**. Thus, the Amendment does not clearly and unambiguously require the amount of $38,750.00 to be substituted for the Beginning Rent amount of $11,758.33 in the Lease's CPI adjustment paragraph.

Second, Enniss's interpretation results in "conflicting [Lease] clauses when the contract is read as a whole." *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (¶ 10) (Miss. 2009). Several Lease provisions tie the payment of rent to Schneider's actual use or possession of the subject property. "[T]he rental payment for any fractional calendar month at the commencement or end of the Lease period shall be prorated." (Lease [38-1] at ¶ II.A.) "[A]ll of the Tenant's proportionate share of costs, expenses,

12

and charges of any nature whatsoever relating to the Premises which may be attributable to or become due during the term, will be paid by Tenant . . . ." (Lease [38-1] at ¶ II.D.) "Tenant shall pay to Landlord, as additional rent during the term hereof, Tenant's proportionate share of Operating Costs . . . ." (Lease [38-1] at ¶ IV.A.) Even the 2nd Amendment to the Lease did not require Schneider to pay the increased Base Rent amount of $38,750.00 on April 1, 2007, "if Landlord can not deliver the possession of the Premises" by that time. (2nd Amendment to Lease [38-3] at ¶ 2.) Yet, under Enniss's present interpretation of the Lease, a portion of Schneider's rental fee (the 2009 – 1999 CPI adjustment) would be calculated on the basis of improved property (33,000 additional square feet of Building space) that did not exist until 2007. Payment for theoretical use of property conflicts with payment for actual use or for "Tenant's proportionate share". (Lease [38-1] at ¶¶ II.D., IV.A.)

    Third, each of the parties has posited more than one interpretation of the Lease

CPI adjustment paragraph over the course of their dispute. "[I]f contract language is susceptible of two or more reasonable interpretations, then ambiguity is present." *Cain v. Cain*, 967 So. 2d 654, 662-63 (¶ 18) (Miss. Ct. App. 2007) (citation omitted). Surely, the parties believed each of their various interpretations to be reasonable at the time they were made. Only rigid formalism would require the Court to turn a blind eye to the parties' varying Lease interpretations in determining whether the Lease and its Amendments are ambiguous as to the amount of rent due in September of 2009. The Court will lift the blindfold and recognize an ambiguity since contract interpretation under

13

Mississippi law "is not a rigid step-by-step approach . . . and overlapping of . . . [the three-tiers of contract construction] is not prohibited." *Crisler v. Crisler*, 963 So. 2d 1248, 1252 (¶ 8) (Miss. Ct. App. 2007) (citing *West v. West*, 891 So. 2d 203 (¶ 15) (Miss. 2004)). Moreover, "it is a question of law for the court to determine whether a contract is ambiguous." *Abernathy*, 913 So. 2d at 283 (¶ 12).

The canons of contract construction urged by the parties do not clarify their intent for purposes of summary judgment. Each party contends the other is responsible for drafting the Lease and its Amendments. Thus, the Court cannot hold as a matter of law that the ambiguity in the interpretation of the Lease's CPI adjustment paragraph should be construed against Enniss or Schneider. Even if there were no dispute as to who prepared the instruments, the Court is not convinced of the applicability of the aforementioned rule since "employment of the canons of construction is discretionary" and there is no indication that Schneider and Anika (Enniss's predecessor in interest) were of "unequal bargaining power." *Refalt v. Refalt*, 94 So. 3d 1222, 1225 (¶ 11) (Miss. Ct. App. 2011), *cert. denied*, 96 So. 3d 732 (Miss. 2012).[8] Schneider's reliance on the alleged "unreasonableness" of Enniss's present interpretation of the Lease also fails to reveal the parties' intent for summary judgment purposes. Schneider's position requires the consideration of extrinsic evidence, industry standards pertaining to the purpose of CPI adjustments, and "the interpretation

---

[8] Numerous courts have refused to construe ambiguities against the drafting party where both contracting parties were commercially sophisticated and their agreement was the result of arm's length negotiations. *See, e.g.*, *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 858-59 (7th Cir. 2002); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir. 1976); *W. Sling & Cable Co. v. Hamilton*, 545 So. 2d 29, 31-32 (Ala. 1989).

of an ambiguous writing by resort to extrinsic evidence presents a question of fact" for trial. *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989).

The parties may very well have intended for Schneider to pay $49,807.82 in rent beginning in September of 2009. However, such intent is not evident to the Court from the "four corners" of the parties' Agreement. Accordingly, Enniss's request for summary judgment as to this issue will be denied. *See Ellis v. Powe*, 645 So. 2d 947, 952-53 (Miss. 1994) ("[W]here the contract is ambiguous and its meaning uncertain, questions of fact are presented which are to be resolved by the trier of facts after plenary trial on the merits.") (citation omitted); *accord Chrisman Mfg., Inc. v. Rowan-Cornil, Inc.*, 859 F. Supp. 2d 842, 849 (S.D. Miss. 2012) (denying motion for summary judgment due to the existence of ambiguous contract terms).

Enniss's request for summary judgment as to enforcement of the Lease's interest penalty provision and attorney's fees reimbursement provision is dependent on the Court finding that Enniss has not been paid what it is owed. Such a ruling is not possible at this time given the aforementioned ambiguity in the parties' Agreement. Thus, summary judgment will also be denied as to these secondary issues.

## II.    Schneider's Motion to Declare [38]

As an initial matter, the Court will construe Schneider's Motion to Declare [38] as a motion for partial summary judgment. The Motion [38] was docketed as such under the Court's ECF system and the Court is unaware of any Federal Rule of Civil Procedure authorizing a motion for declaratory relief. *Cf. Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("[A] party may not make a *motion* for

declaratory relief, but rather, the party must bring an *action* for a declaratory judgment.") (citations omitted); *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) ("The only way plaintiffs' motion [seeking declaratory relief] can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for declaratory judgment."). Further, most of the relief requested under the Motion to Declare [38] is the converse of the relief requested under Enniss's Motion for Summary Judgment [44].

Schneider first requests that the Court find the Lease and its Amendments to be ambiguous regarding the proper manner of calculating CPI adjustments as to the expanded Building space. This request will be granted on the same basis that Enniss's primary basis for summary judgment will be denied. It is "less than clear" to the Court as to how CPI calculations are to be made starting in September, 2009. *Barnett*, 266 So. 2d at 586.

Schneider next seeks a ruling that Enniss's present interpretation of the Lease's CPI adjustment paragraph is unreasonable as a matter of law. This request will be denied under Rule 56. Schneider relies on extrinsic evidence, standard industry practices, in support of this argument and summary judgment is inappropriate when an ambiguous contract is interpreted "through extrinsic evidence of the parties' intent . . . ." *S. Natural Gas Co. v. Pursue* Energy, 781 F.2d 1079, 1081, 1083 (5th Cir. 1986); *see also Kight*, 537 So. 2d at 1358.

Finally, Schneider asks the Court to declare the Lease's interest penalty provision unenforceable as a matter of law. Schneider's request is based on Mississippi

16

law that "distinguish[es] between valid liquidated damages provisions, and clauses constituting a penalty, which are invalid." *Dahlstrom Corp. v. State Hwy. Comm'n*, 590 F.2d 614, 615 (5th Cir. 1979) (citing *Shields v. Early*, 132 Miss. 282, 95 So. 839, 841 (Miss. 1923)). The subject Lease provision provides:

> In the event Tenant fails to pay any installment of rent, including any amount treated as additional rent hereunder, or other sums hereunder as and when such installment or other charge is due, Tenant shall pay to Landlord on demand a late charge in an amount equal to five percent (5%) of such installment or other charge overdue in any month and five percent (5) [*sic*] each month thereafter until paid in full to help defray the additional cost to Landlord for processing such late payments, and such late charge shall be additional rent hereunder and the failure to pay such late charge with [*sic*] ten (10) days after demand therefor shall be an additional event of default hereunder. The provision for such late charge shall be in addition to all Landlord's other rights and remedies hereunder or at law and shall not be construed as liquidated damages or as limiting Landlord's remedies in any manner.

(*See* Lease [38-1] at p. 15.)

Enforcement of the preceding Lease clause requires a finding that Schneider has failed to make contractually required rent payments. The amount of rent owed by Schneider is an issue for trial given the ambiguous nature of the Lease's CPI adjustment paragraph in relation to the Amendments. If Schneider is found not to owe any rent beyond what it has been paying, then the issue of enforcement of the above-quoted Lease provision will be moot. The Court will deny Schneider's request for a declaration regarding enforcement of this provision since such a ruling at this time may constitute an impermissible advisory opinion. *See Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978) ("The federal courts are not empowered to issue advisory opinions 'on an abstract or hypothetical question.'") (quoting *Benton v. Maryland*, 395 U.S. 784, 788, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)).

17

### III. Schneider's Motion to Strike Expert [37] and Enniss's *Daubert* Motion [42]

Schneider contends that Enniss's expert, J. Walter Michel, III, should be stricken because his proposed testimony interpreting the Lease and its Amendments usurps the role of the court.  Enniss requests that certain opinions of Schneider's expert, Steven G. Rogers, be excluded on this same basis and because the opinions are irrelevant and unreliable.  Schneider and Enniss's motions implicate Rule 702 of the Federal Rules of Evidence.

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court held that Rule A702 imposes a special obligation upon a trial judge to >ensure that any and all scientific testimony . . . is not only relevant, but reliable.=@  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (quoting *Daubert*, 509 U.S. at 589).  In *Kumho Tire*, the Supreme Court held that the trial court's Agatekeeping obligation@ applies to all expert testimony, and not only to scientific

testimony. 526 U.S. at 147. Rule 702's "relevance prong requires the proponent to demonstrate that the expert=s 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)) (citing *Daubert*, 509 U.S. at 592-93). In order to be reliable under Rule 702, the expert opinion must Abe grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (citations omitted). The Supreme Court has set forth several factors to guide the reliability determination, but the inquiry is to be flexible and trial courts enjoy broad latitude in determining the reliability of expert testimony. *See Lightfoot v. MXEnergy Electric, Inc. (In re MBS Mgmt. Servs., Inc.)*, 690 F.3d 352, 357 (5th Cir. 2012) (citing *Kumho Tire*, 526 U.S. at 141-42).

Most of *Daubert*'s safeguards "are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[9] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Thus, the following findings by the United States District Court for the Eastern Division of Louisiana are particularly relevant:

> In the wake of *Daubert*, several courts have recognized that in the context of a bench trial, as is the case here, "the *Daubert* gatekeeping obligation is less pressing" because the gatekeeper and trier of fact are the same. *Volk v. United States*, 57 F.Supp.2d 888, 896 n. 5 (N.D.Cal.1999). *See also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed.Cir.2002) (explaining that in the context of a bench trial the *Daubert* standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir.2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F.Supp.2d 584, 596 n. 10 (D.N.J.2002) ("[W]here the court

---

[9] (*See* Case Management Order [22] at ¶ 7(A), setting this action for a non-jury trial.)

itself acts as the ultimate trier of fact at a bench trial, the Court's role as a gatekeeper is arguably less essential."); *Fierro v. Gomez*, 865 F.Supp. 1387, 1395 n. 7 (N.D.Cal.1994), *aff'd*, 77 F.3d 301 (9th Cir.1996), *vacated and remanded on other grounds*, 519 U.S. 918, 117 S.Ct. 285, 136 L.Ed.2d 204 (1996), *modified on other grounds on remand*, 147 F.3d 1158 (9th Cir.1998) (concluding that, in the context of a nonjury trial, under *Daubert* it is better to "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test 'shaky but admissible evidence' "than to exclude expert evidence altogether (quoting *Daubert*)). And as Judge Posner has observed: " *Daubert* requires a binary choice-admit or exclude-and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves." *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F.Supp.2d 1011, 1042 (N.D.Ill.2003) (sitting by designation), *aff'd on other grounds*, 403 F.3d 1331 (Fed.Cir.2005).

*Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2008 WL 1930681, at *2 (E.D. La. Apr. 9, 2008); *accord Marsh v. Wallace*, No. 4:07cv60, 2008 WL 4000809, at *6-7 (S.D. Miss. Aug. 22, 2008).

Both Schneider and Enniss's motions will be granted to the extent that neither Mr. Michel nor Mr. Rogers will be allowed to offer testimony regarding whether the Lease and its Amendments are clear or ambiguous.  "[I]t is a question of law for the court to determine whether a contract is ambiguous."  *Abernathy*, 913 So. 2d at 283 (¶ 12).  The Court has determined that the Lease and its Amendments are ambiguous with respect to the calculation of CPI adjustments starting in September, 2009.  Thus, Mr. Rogers and Mr. Michel's opinions regarding the clarity, or lack thereof, of the subject Lease provisions are simply irrelevant.  *Cf. Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 668 (S.D. Tex. 2009) ("'[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or

expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible.'") (quoting *Sheet Metal Workers, Int'l Assn., Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (6th Cir. 2001)).

Both Schneider and Enniss's motions will be denied in all other respects. Neither party challenges the qualifications or credentials of the other's expert, and both experts appear to be well versed in the field of commercial real estate transactions. There is no blanket prohibition in the Fifth Circuit on the admissibility of expert testimony regarding particular industry standards and practices. In fact, the Fifth Circuit has "recognized that a trial court's reliance on individuals experienced in a particular field for the purposes of obtaining explanation of the technical meaning of terms used in the industry is 'prudent.'" *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (citing *Phillips Oil Co. v. OKC, Corp.*, 812 F.2d 265, 281 (5th Cir. 1987)). Moreover, in construing a particular contract term, a court "'must give consideration to the meaning attributed to that term in the industry.'" *Id.* (quoting *Pers. Preference Video, Inc. v. HBO*, 986 F.2d 110, 114 (5th Cir. 1993)). Having found the relevant Lease provisions to be ambiguous, the Court may rely on extrinsic evidence in the form of the parties' experts' opinions regarding industry standards for the calculation of, and purpose for CPI adjustments in commercial leases. *Cf. Ergon-W. Va., Inc. v. Dynegy Mktg. & Trade*, No. 3:06cv714, 2011 WL 765555, at *6 (S.D. Miss. Feb. 25, 2011) (finding that experts could testify as to industry customs and practices in light of contract ambiguity); *Black Stone Acquisitions Partners I, L.P. v. Black*, No. 1:07cv9, 2008 WL 3335895, at *5 (N.D. Miss. Aug. 6, 2008) (same as to expert testimony regarding the technical definition of a

contract term). Of course, the experts' trial testimony will be limited in scope to their opinions that were timely disclosed through discovery. *See* Fed. R. Civ. P. 26(a)(2)(B); L.U.Civ.R. 26(a)(2).

The Court finds that the parties' remaining expert objections are aimed at "the weight of the testimony, not its admissibility." *United States v. Valencia*, 600 F.3d 389, 429 (5th Cir. 2010). The Court, as the finder of fact, will give each expert's testimony the weight it deserves at trial. *See, e.g.*, *Gibbs*, 210 F.3d at 500; *Marsh*, 2008 WL 4000809, at *6-7; *Johnson*, 2008 WL 1930681, at *2.

## IV. Enniss's Motion to Strike [54]

Enniss takes issue with Schneider submitting the Affidavit of Steve Parent [50-4] in support of its Reply [50] to Enniss's Response [48] to Schneider's Motion to Declare [38]. Mr. Parent's affidavit provides that he is "an employee of Schneider Enterprise Resources, LLC, an affiliate company of Schneider National Carriers, Inc." (Parent Aff. [50-4] at ¶ 2.) Mr. Parent further states that he is familiar with the Lease and its Amendments, and that he personally signed both the 1st and 2nd Amendment on behalf of Schneider. (*See* Parent Aff. [50-4] at ¶ 3.) Mr. Parent also states that Schneider did not draft the Lease or its Amendments and that these instruments were drafted either by Anika or its affiliate, ProVisions, LLC. (*See* Parent Aff. [50-4] at ¶¶ 4, 5.) Schneider relies on Mr. Parent's affidavit in support of its argument that the Lease and its Amendments should be construed against Enniss since its predecessor in interest, Anika, drafted the instruments. (*See* Schneider's Reply [50] at pp. 8-9; Resp. to Mot. for SJ [52] at pp. 10-11.)

Enniss argues that Mr. Parent's Affidavit [50-4] should be stricken on the following grounds:  i) the affidavit contradicts Schneider's Answer; ii) Mr. Parent lacks personal knowledge of the drafting and creation of the Lease and its Amendments; iii) the affidavit is procedurally improper; and iv) the affidavit constitutes a discovery violation.  In addition, Enniss requests leave to file a surreply to address Schneider's contention that Enniss drafted the Agreement, and/or amendment of the case management order to allow for further discovery regarding this issue.  Enniss's Motion to Strike [54] will be denied on several grounds.

First, the Court has not relied on Mr. Parent's Affidavit [50-4] to construe the Agreement against Enniss for purposes of the parties' competing requests for summary judgment.  The Court merely found that the parties' disagreement over who drafted the Agreement precluded it from holding as a matter of law that the ambiguity in the subject Lease provisions should be construed against Enniss or Schneider.  Therefore, Enniss's request that Mr. Parent's Affidavit be stricken is moot with respect to summary judgment in this cause.[10]

Second, the fact that Schneider's Answer acknowledged that the Lease "speaks for itself" and that Schneider is considered the offeror under Paragraph XXV.J. of the Lease does not mean that Schneider drafted the instruments.  The words "offeror" and

---

[10]

     It is also highly unlikely that the Court will apply the discretionary canon of contract construction that resolves contract ambiguities against the drafting party in subsequent proceedings in this case since there is no indication that Schneider and Anika were anything but commercially sophisticated parties. *See, e.g.*, *Beanstalk Group, Inc.*, 283 F.3d at 858-59; *Eagle Leasing Corp.*, 540 F.2d at 1261; *Refalt*, 94 So. 3d at 1225 (¶ 11); *Hamilton*, 545 So. 2d at 31-32.

"drafter" are not always synonymous. *See, e.g.*, Miss. Code Ann. § 75-2-205 (providing that a "firm offer" under the UCC may encompass an offer made "on a form supplied by the offeree"); *ITT Fed. Servs. Corp. v. United States*, 45 Fed. Cl. 174, 189 (Fed. Cl. 1999) (addressing public contract bidding process in which the federal government drafts the contract solicitation, but the bidder is considered the offeror); *Heritage Bldg. Prop., LLC v. Prime Income Asset Mgmt., Inc.*, 43 So. 3d 1138, 1142 (¶ 9), 1143 (¶ 11) (Miss. Ct. App. 2009) (involving contract dispute where the purchaser was considered to have made the "offer" although the seller's counsel drafted the agreement). In this case, it appears that Schneider was considered the offeror because the subject property was "on the open market"[11] and Anika wanted the final say as to any competing offers, and not because Schneider drafted the Agreement.

Third, in reviewing Mr. Parent's Affidavit [50-4], the Court finds no circumstances precluding its consideration under Federal Rule of Civil Procedure 56(c)(4). Mr. Parent states that he has "firsthand knowledge of the matters set forth herein." (Parent Aff. [50-4] at ¶ 1.) Further, Mr. Parent's employment position with Schneider and the fact that he signed the Lease Amendments on behalf of Schneider would seem to make him competent to provide testimony as to whether or not Schneider drafted the instruments. (*See* Parent Aff. [50-4] at ¶¶ 2, 3.) The Court also finds no evidentiary problems with the affidavit, such as Mr. Parent testifying as to what someone else told him.

Fourth, Schneider did not violate any discovery rule by failing to advise Enniss that Mr. Parent would provide testimony as to who drafted the Agreement in its

---

[11] (Lease [38-1] at ¶ XXV.J.)

interrogatory responses. Schneider's interrogatory responses provide that Steve Parent may be called to testify at trial and that Mr. Parent is "expected to testify regarding the subject matter of the Lease Agreement between Anika and Schneider, the amendments to the Lease, communications and negotiations with Anika, [and] communications with Enniss . . . ." (*See* Doc. No. [58] at pp. 8-9.) This was sufficient in light of the interrogatories posed by Enniss.

Finally, a surreply from Enniss is unwarranted and any potential procedural impropriety arising from Schneider's filing of the affidavit has been cured. "[A] district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond." *Vias Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004) (citations omitted). Enniss has had ample opportunity to respond to the issues raised by the affidavit as evidenced by its Motion to Strike [54]; Memorandum of Law in Support of Motion to Strike [55]; Reply in Support of Motion for Summary Judgment [56] at pp. 7-9; and Reply in Support of Motion to Strike [60]. For this same reason, Enniss's request for further discovery in relation to the affidavit is not well taken.

## V.    Schneider's Motion for Leave [59]

Schneider's motion relates to its efforts to terminate the Lease. The Lease has a termination date of March 31, 2027. (*See* 2nd Amendment to Lease [38-3] at ¶ 1.) However, provided Schneider "is not in default" with respect to its Lease obligations, it has an option to terminate the Lease early in the event that its contract with General Motors Corporation Service Parts Operations ("GMC") is not renewed or is terminated.

(*See* Lease [38-1] at ¶ XXXVII.A.)  The "Option to Terminate" Lease provision requires Schneider to provide written notice of its intent to terminate four (4) months in advance. Further, an early termination fee equaling "four (4) month's base rent and operating expenses" is required unless the subject property is occupied by another tenant immediately following Schneider's vacation of the property.

On or about September 25, 2012, Schneider was advised that its contract with GMC pertaining to operations in Mississippi would not be renewed.  GMC opted to contract with another provider, Lanter Delivery Systems ("Lanter"), effective February 1, 2013, and has advised that it intends for Lanter to lease the subject property in performance of its contract with GMC.  On September 28, 2012, counsel for Schneider sent written notice to counsel for Enniss advising that the GMC contract would not be renewed and that Schneider was exercising its option to terminate the Lease.  On October 12, 2012, counsel for Enniss sent written correspondence to counsel for Schneider rejecting the notice of early termination.

On November 1, 2012, Schneider filed its Motion for Leave [59].  The motion requests that Schneider be granted leave to file a supplemental brief to its Motion to Declare [38] addressing the following matters:  whether the notice of termination was effective; the effective date of the notice; whether a termination fee is required; and the correct amount of the termination fee.  Schneider also seeks to amend its pleadings to assert that Enniss is in breach of the Lease by rejecting the notice of termination, and that Enniss has failed to mitigate damages to the extent it refuses to allow another tenant to lease the subject property.

The Court will construe Schneider's Motion for Leave [59] as a motion to supplement pleadings under Federal Rule of Civil Procedure 15(d). The Rule provides in pertinent part that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The events made the subject of Schneider's motion, GMC's notice that Schneider's contract would not be renewed and Enniss's rejection of Schneider's notice of termination, occurred subsequent to the pleading amendment and motion deadlines in this cause.

The purpose of Rule 15(d) "is to promote as complete an adjudication of the dispute between the parties as is possible." 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1504 (3d ed.). The grant of a motion under the Rule "is within the discretion of the trial court." *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1193 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007, 103 S. Ct. 1245, 75 L. Ed. 2d 476 (1983)). That discretion is to be guided by several factors: i) undue delay, bad faith or dilatory motive on the part of the movant; ii) undue prejudice to the nonmoving party; and iii) futility of supplementation. *See id.* at 1194.

The Court perceives no bad faith conduct or undue delay on Schneider's part in filing the Motion for Leave [59]. Schneider promptly notified Enniss that it was exercising its option to terminate the Lease upon learning that the GMC contract would not be renewed. Also, it does not appear that Schneider unnecessarily delayed bringing the Lease termination issue to the Court's attention after Enniss rejected the notice of termination. By all accounts, Schneider's motive in filing the Motion for Leave [59] is to

27

have all Lease disputes between it and Enniss resolved in one legal proceeding, and not to delay the resolution of this action.

Enniss, as the nonmoving party, would suffer no "undue prejudice" if Schneider is allowed to supplement its pleadings to address the Lease termination issues. Both parties will undoubtedly incur additional legal expenses in this suit due to the inclusion of these issues. However, those expenses would be equaled if not surpassed by the expenses associated with a new, separate action filed by Schneider against Enniss concerning Lease termination. Judicial economy supports Schneider's supplementation of the pleadings.

A supplemental pleading is futile if it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). The Court does not have enough information before it at this time to weigh the legal merits of Schneider's additional claims. Thus, the Court finds that the better approach would be to allow the filing of a supplemental pleading and then have Enniss, if it so chooses, to test the legal sufficiency of the claims "in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer." *DT Apartment Group, LP v. CWCapital, LLC*, No. 3:12cv0437, 2012 WL 4740488, at *2-3 (N.D. Tex. Oct. 3, 2012) (granting motion to supplement and noting that the court's almost unvarying practice is to test the merits of additional claims or defenses outside of the context of Rule 15) (citations omitted). On the whole, the discretionary Rule 15 factors support Schneider's supplementation of the pleadings to address the Lease termination issues.

Enniss asserts two principal objections to Schneider's Motion for Leave [59]:  1) lack of ripeness because certain conditions precedent to Lease termination have not been met; and 2) the inapplicability of any Federal Rule of Civil Procedure to Schneider's requested relief.  Rule 15(d) suffices to overcome Enniss's second objection.  The declaratory nature of Schneider's requested relief defeats Enniss's first objection.

"The Declaratory Judgment Act exists to allow litigants to determine an actual controversy such as this one before the dispute grows into a contract violation . . . ." *Doody v. Ameriquest Mortgage Co.*, 242 F.3d 286, 288 (5th Cir. 2001).  The Act enables a party to obtain "equitable relief when legal relief is not yet available" in order to avoid any inequities which may arise from delayed assessment of the parties' contractual obligations.  *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 839-40 (5th Cir. 2003).  "[I]n deciding whether to grant declaratory relief, the court must necessarily assess the likelihood that future events will occur, but the court ought not require that those contingencies . . . have occurred at the time relief is sought . . . ."  *Id.* at 840.

The test for determining ripeness in the declaratory judgment context "turns on whether a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests."  *Id.* at 838 (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000)).  Enniss and Schneider clearly have adverse legal interests regarding the Lease as evidenced by this lawsuit.  The Lease termination issues are just another example of their competing legal positions.  The Court is

satisfied of the immediacy and reality of the Lease termination issues given that Schneider's contract with GMC is set to terminate on January 31, 2013, and that "Enniss is in discussions to lease the property to a subsequent tenant . . . ." (*See* Enniss's Resp. in Opp. to Mot. for Leave [61] at ¶ 2.) Thus, the matter of ripeness is not an impediment to the Court's grant of the Motion for Leave [59].[12]

In light of the foregoing, Schneider's Motion for Leave [59] will be granted in part and denied in part. The motion is granted to the extent that Schneider is authorized to file a supplemental "pleading" raising the issues outlined in Paragraphs 16 and 19 of the motion. The motion is denied to the extent that Schneider seeks to supplement its Motion to Declare [38]. The Motion to Declare [38] is not a "pleading" capable of amendment or supplementation under Rule 15. *Cf. Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 911 (5th Cir. 1993) ("[A] motion to dismiss is not a 'pleading' for the purposes of Rule 15(a)."). In addition, the Federal Rules do not recognize a motion for declaratory relief. *See Thomas*, 594 F.3d at 830; *Int'l Bhd. of Teamsters*, 160 F.R.D. at 456.

This matter is presently set for a pretrial conference on January 9, 2013. "A date certain will be set for the trial at the time of the pretrial conference." (*See* November 29, 2012 Text Order.) In addition, the parties should be prepared to discuss what further discovery, if any, and pretrial procedures are needed in light of the Court's grant of Schneider's Motion for Leave [59].

---

[12]

    Nothing said here is meant to preclude Enniss from seeking dismissal of Schneider's supplemental claims (once the claims are properly asserted in this cause) on the basis of ripeness or any other ground Enniss chooses to bring before the Court.

**<u>CONCLUSION</u>**

For the foregoing reasons,

IT IS ORDERED AND ADJUDGED that Enniss's Motion for Summary Judgment [44] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Schneider's Motion to Declare [38] is granted in part and denied in part. The motion is granted to the extent that the Court has found the subject Lease provisions to be ambiguous regarding how to calculate CPI adjustments starting in September of 2009. The motion is denied in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Schneider's Motion to Strike Expert [37] is granted in part and denied in part. Enniss's expert witness will be precluded from offering testimony regarding whether the Lease and its Amendments are clear or ambiguous. The motion is denied in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Enniss's *Daubert* Motion [42] is granted in part and denied in part. Schneider's expert witness will be precluded from offering testimony regarding whether the Lease and its Amendments are clear or ambiguous. The motion is denied in all other respects.

IT IS FURTHER ORDERED AND ADJUDGED that Enniss's Motion to Strike [54] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Schneider's Motion for Leave [59] is granted in part and denied in part. Schneider may file a supplemental "pleading" raising the issues specified in Paragraphs sixteen (16) and nineteen (19) of its Motion

for Leave [59].  The motion is denied to the extent that Schneider seeks leave to supplement its Motion to Declare [38].

SO ORDERED AND ADJUDGED this the 2nd day of January, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE